Good morning, Your Honors, and may it please the Court, my name is Alan DuBois and I represent the appellant in this case, Lionel Cox. This appeal presents three separate issues, each of which I believe is worthy of discussion, but I understand my time is limited, so I'm happy to focus my attention on whatever areas the Court finds most interesting. But let me start off talking about the admission of the 404B evidence in this case. Mr. Cox was charged with possessing two guns during the course of two separate transactions involving the transfer of guns that occurred on May 14th and June 27th of 2012. The government, however, devoted about half of its trial presentation to presenting evidence about a third transaction that occurred on May 21st, where there was no allegation or no evidence at all that Mr. Cox possessed a gun at any point during that transaction. Now the government tried, purported to introduce this evidence pursuant to Rule 404B, but this evidence served no proper 404B purpose and perhaps implicitly recognized... Why is this 404B evidence? I mean, it's the, this third, this third sale was sort of sandwiched equidistant between the, I guess it was, the May 12 sale was, May 21st sale was sandwiched equidistant almost between the first charged sale. And so it could be almost be seen as part of a continuous story. Well, I mean, it's because normally when you are dealing with 404B evidence, you have the 404B evidence takes place well after the course of criminal conduct or it's took place years before. Temporarily, it's, it's distant, more distant. And, but this just seems right in the swim of things. Well, well, Your Honor, a few answers to that. First off, the government presented it as 404B evidence. That's how they, they presented it to the court. That's the grounds on which the court introduced it or admitted it. And that's the ground that the jury was instructed on how to consider this evidence. We don't need to, I mean, we're not bound by that. Well, I certainly think you should be, Your Honor, because if the jury's told that evidence is there to consider evidence for a certain purpose, yet the government says now for the first time on appeal, this is the first time that they've raised this issue. Normally, those types of, those types of arguments are not considered for the first time on appeal. But can't we, if we agree with the outcome, aren't we free to affirm on any basis that I don't think so, Your Honor, because of the fact that this was not, this, these were not two equal bases for admission. 404B evidence serves one purpose. This sort of intrinsic evidence serves another purpose. But I would say even taken on its own terms. So they did more than was necessary by, you know, going through all the 404B hoops. No, no, no. They did, they did much less than is necessary because 404B, they're, they're, they're told this serves this purpose. That you are considered for this ground. If they're not to consider for that ground, they shouldn't have been instructed that way. Do you need to give a limiting instruction for, for, for intrinsic evidence? Well, exactly. They did give a, yeah, I think it's sort of a misnomer to call it a limiting instruction. It's certainly a cautionary instruction, but it tells the jury how they are to consider this evidence. If they weren't supposed to consider this evidence for this purpose, they shouldn't have been told that. But let me say this, even taken on its own terms, this was not intrinsic to the offense. The government in its brief says they're, oh, sorry. Well, let's, let's assume that's, that was what I was going to ask. I mean, let's assume that it is an intrinsic. Let's assume that it is appropriately 404B. What, why is it objectionable then? Wasn't the question of whether or not Cox knowingly possessed firearms a disputed issue? It's, it was the only disputed issue, Your Honor. Right. And this evidence is knowledge. I'm sorry. No, I was going to say exactly the same thing. Well, I mean, because, and if, if I could speak to this for a second. I agree with you, it's not extrinsic evidence. I don't think it is of the, of the crimes charge. But it goes directly to his knowledge. His defense was he was just a matchmaker. He's putting this, you know, couple people together. And this evidence shows that he was into the drug, excuse me, into the gun trade. He was negotiating the price of a gun. He was talking to people about guns. He knew what he, this shows guilty knowledge, it seems to me. And his intent pretty much as clearly as any 404 type evidence would. Well, two answers, Your Honor. First, intent is not an element of 922G. Knowledge is, but. Well, knowledge and intent to the extent that he knew what, knew what was going on. Right. Not specific intent, but intent, general intent is always something that has to be established. There wasn't accident or mistake. That's correct, Your Honor. Or something like that. But I think, I think the, the argument that the government makes, and you're adverting to, conflates two different types of knowledge. There was no dispute in the record that Mr. Cox knew that these gun transactions were being brokered and that they were occurring. The only thing, I think this evidence might have been admissible had Mr. Cox, the only issue was the knowingness of his possession. In a case, during a transaction in which there was no allegation of possession, I, I simply don't think it logically follows that that can shed any light on whether or not on some other occasion involving some other guns, Mr. Cox might have knowingly possessed them. The evidence, Mr. Cox's defense was not that, oh, I had this gun, but I didn't know it was there. Or I had this gun, but I thought it was a toy. The only knowledge that this May 21st transaction goes to is his knowledge of whether these gun transactions were going on. And that might be very relevant if he had been charged with illicit transfer of a weapon. I'm sorry, go ahead. How would the government, in your view, be able to show constructive possession? There was no aspect of constructive possession on the May 21st transaction. I think the government, I think it's clear that that's the case. But doesn't, it shows knowledge, and doesn't it go to show knowledge, as Judge Keenan pointed out, and absence of mistake? He's not arguing that there was a mistake. And it doesn't show the knowledge of knowing possession. It has absolutely nothing to do with possession. But it doesn't have to be crafted to his argument. That's not what 404B requires. But it does have to be crafted to the government's burden of proof and the elements of the offense. That he actually or constructively possessed guns. That's correct. And I think if you look at this record, there is nothing, nothing about the May 21st transaction that sheds any light onto the knowingness, constructive or otherwise, of his possession. Doesn't his defense make it relevant? And see, I think your argument would be a lot stronger if he hadn't used this matchmaker defense. But essentially, he's saying, I'm an innocent broker. I'm just somebody who's putting A in touch with B. And it seems to me that that puts this in play. Well, Your Honor, again, not to belabor the point. I simply don't see that connection. I would definitely agree with you, Your Honor. If this was a case involving a charge of illegal transfer of a weapon, this would clearly be relevant. But this was not a case of illegal transfer. It was a case of illegal possession. And all this May 21st evidence shows is, as Your Honor points out, that there was a brokerage aspect. Now, of course, Mr. Cox doesn't contest that. But putting that aside, focusing on the government's burden of proof and the elements of the offense, there's nothing about that particular knowledge that this May 21st transaction sheds any light on whatsoever. It simply is put out there to show that he is the type of person, the type of bad person, who would engage in these types of illicit transactions. And I think I would also point out the fact that this really was the tail that wagged the dog in this trial. The government spent almost half of its trial presentation on this one transaction, again, to emphasize the point where there was no allegation that Mr. Cox ever saw that gun, was ever touched that gun, was ever in the same room as that gun. Yet they went through this entire interminable discussion and description of how this came. He was going to the Walmart. Then he's not going to the Walmart, none of which involved Mr. Cox. And at one point, the district court even says, we are getting way far afield here. This is almost incomprehensible given the convoluted manner in which you're trying to present it and the way in which the witness was speaking. So I think the danger or the prejudice suffered by Mr. Cox in this case is exactly, I think, the danger that I'm worried that I'm not dispelling, which is the jury is focused on the wrong thing. They're focused on, the government makes this appear as if this is a case about illegal gun transfer, illegal gun transaction. Well, you know, what we do is we, I mean, these are trial court calls on these evidentiary matters. And in this case, even if it's not intrinsic evidence, temporarily, it's very close. And it's taking, all of these things are taking place at Express Loo. And this individual, this defendant, is masterminding everything and providing the seller with the buyer's number and telling, you know, telling people where to park. Um, and he's essentially directing what's going to happen with the firearm. Um, you know, without his, without his involvement, um, the firearm would, would never move. He's, he's directing, um, the movement of the firearm. I, I agree, Your Honor, but that's not what he was charged with. That's not, that wasn't the crime that he was charged with. He could direct the firearm as much as he wants, as long as he doesn't actively or constructively possess it. And that's exactly what happened on the, on the May 21st transaction. He never actually, it goes to his knowledge on the, in the other two sales. His knowledge of, of what is what I would ask the court. His knowledge of what, that is relevant to this case. Of a firearm by a convicted felon. And again, these are 922G offenses. He's pleading not guilty, which he has every right to do. The case is going before a jury. He's pleading lack of knowledge. Um, he can't very well plead that he's not a felon. He's just saying, I didn't know. And this goes to refute the fact that he didn't know. He was not, he's not an innocent. It's knowing possession. That's correct, Your Honor. And I would say that, you know, again, the May 21st has nothing to do with whether or not he knew he was possessing a firearm. But I would like to, I see my time is slipping. But that's a matter of weight, really, more than admissibility. I mean, Your Honor, I would disagree because I don't think it's relevant or necessary to an element of the offense, which is the test that this court set up. But if I could, I'd like to turn briefly to the issue about the jury instruction on the aiding and abetting issue. Mr. Cox requested an instruction that the jury be told that in order to convict him as an aider and abetter, he specifically needed to know that his co-defendant, Neville Ward, was a felon. The district court declined to give this instruction. However, he was entitled to it because this was a correct though non-obvious statement of the law that the jury wouldn't necessarily come to on its own absent instruction. The Third Circuit in Xavier spoke directly to this when they said, the jury could not have been expected to make a finding beyond a reasonable doubt as to the defendant's brother's status as a felon in the absence of an instruction to do so. And they found... Well, there are other circuits that go the other way. There's one other circuit that goes the other way. In that case, it was called into question by subsequent cases of the Ninth Circuit. Well, it seemed to me there were two circuits that went the other way. There was a Seventh Circuit case that dealt with a related though not identical issue. And that was a case where the issue was slightly to the side because it was clear that the gun was used in connection with another offense that the defendant was well aware of. But the actual instruction that was given, you know, it may not have been in the exact words that you wanted, but the district court's instruction said the defendant knew the crime was to be committed and knowingly did some act to further its commission. Now, the crime was the knowledgeable possession. I mean, it was aiding and abetting the knowledgeable possession of a firearm. So we're saying he knew a crime was to be committed. Well, how would you know a crime was going to be committed under an aiding and abetting theory? You would know that the principal was a felon because that's what makes the possession illegal. So, you know, I'm not sure we even need to reach this circuit split because the instruction substantially gave you what you asked for. Well, that's a very important point. I think you do need to reach the circuit split because if you look at the instruction that was given in the Cannon case, which is the Ninth Circuit case that held that the defendant did not have to specifically know, they gave the exact same general instruction that this court did here. Could you incorporate into your response, kind of as a threshold matter, what you contend is the standard of review of the jury instruction issue, but as a threshold matter in responding to Judge Wilkinson's question? Does that make sense? I think this issue was preserved. We requested the instruction. You don't think it's plain error, in other words? No, we think we went under either standard and Xavier found it was, in fact, plain error not to give this, but we think it was requested and then requested during the charge conference and not given. But to answer Judge Wilkinson's question specifically, in a way, the government is trying to have it both ways by saying, oh, well, you know, the law is not clear on this, so we didn't have to instruct. But then they say, but this instruction was so clear that the jury would have gotten it anyway. Well, the flaw in that argument, I think, is that the Cannon case, which held that the jury need not be formally instructed about this point, looked identical to the instruction given here. And what that means is that, based on the instruction given, a jury could reasonably conclude either that the defendant had to know that his principal was a felon or that he didn't have to know there was a felon, that this point needed to be addressed by the district court, given the very unobviousness of the- How else would he know that a crime was going to be committed if he wasn't aware that the principal was a felon? Well, that's what the Ninth Circuit has held. I mean, that's- But I'm still perplexed because, you know, we can quibble about the meaning, but we're an aiding and abetting theory, and we're talking about the knowledge that a crime was going to be committed. The instruction given by the district court said the defendant knew a crime was going to be committed and knowingly set out to further its commission. So there's a scienter element and a mens re element clearly in these instructions. And I don't see how you could know that a crime was going to take place unless you knew the principal was a felon, because that was what- that fact was what differentiated the innocent possession of guns from the criminal possession of guns. I think that's correct, Your Honor, and I think as a matter of law, you're absolutely correct. That's the position we're arguing, is that he needed to know. Our point is that that is not something that a jury would necessarily take from this general jury instruction. That's what the Third Circuit held in Xavier. That's what the Sixth Circuit held in Garner, that this is not something that's so intuitively obvious that the jury should not be instructed on it. I think that conclusion is bolstered by the fact that the Ninth Circuit, which doesn't subscribe to that theory, gives the exact same instruction. The instruction is opaque as to the knowledge of whether- as to the requirement whether the defendant must know the principal is a felon. And that's why, in this case, the jury needed to be instructed on it. I see my time is up, but I- Judge Keenan had a question. That's okay. Allison, do you have a question? You're fine. Thank you. Thank you, Your Honor. Ms. Shah. Good morning. May it please the Court, I'm Michelle Shah here on behalf of the United States. Now we spent- the defendant has spent a lot of time talking about the 404B evidence issue and the jury instructions. I'd like to first start talking about the issue related to the jury instructions. And that's because I want to first go to a threshold matter. Before we're talking about whether or not the instructions were sufficient, whether or not they covered the instruction, the fact of the matter here is that if you look to the full dialogue before the District Court regarding this aiding and abetting instruction, you see that the defendant was faced with competing interest and therefore made the strategic and tactical decision to abandon his request for a jury instruction that the defendant was required to have knowledge that Neville Ward was a felon. And if I can walk- Did you say that it's waived? Yes, Your Honor. I'm arguing that it's- it was something that they did raise. It was in their proposed jury instructions. As the discussion progressed- Well, Your Honor, I think there are two separate pieces to it. And we're not talking about their failure to object to it before the District Court, which would then would be a plain error issue. But here what we're talking about is the defendant completely abandoning that request and making the strategic and- Well, how are you saying he abandoned the request other than the fact he failed to object? Well, Your Honor, in this case, he actually did raise it. As part of the dialogue about the jury instructions, he didn't necessarily fail to object because he did ask the court to include this instruction. Well, your position- it seems to me you're arguing a distinction without a difference in this case because if it's plain error, then you win because there's a circuit split. There's no controlling precedent here. And if it's waived, you win. So why are we arguing this? I mean, isn't the real issue here, it seems to me, whether this is a plain error situation? Well, I think you're right, Your Honor, in your characterization that if it is subject to plain error review, we would win. I think that they- Okay. Is there a substantial injustice here involving this case? No, Your Honor. Under the plain errors? No, there's not. Why not? And the reason is the instructions that were given covered what the defendant was requesting. Now, we've all talked about this circuit split. Yes, there is a circuit split as to whether or not aiding and abetting felon in possession of a firearm requires knowledge that that individual was a felon. Now, I'm inclined to agree with Judge Wilkinson that it might require that. And it seemed like the district court here was inclined to agree with that as well. And that's because she erred on the side of caution and included in her instructions a requirement that there be that sort of intentional act in furtherance of the commission of the felon in possession of a firearm, which required the knowledge that that individual would be a felon. But how would a jury know that from that instruction? Well- I mean, it's really kind of abstract, isn't it? It is so much more abstract to say you're charged that the defendant had to have knowledge of what was going on rather than to say the defendant had to know or have cause to believe, I think, as some of the other circuits say, that the co-defendant was a convicted felon. I mean, one is very abstract and one is very concrete. And why wasn't he entitled to the concrete one? Well, Your Honor, here, I believe the district court's jury instructions were clear. She talked about them in three different ways. First, she started- They were- Yeah, and I guess I want to be clear myself. I'm not saying they were erroneous. I mean, I think they were absolutely fine, except why wasn't he entitled to more? I don't think more was necessary. If you look to the dialogue regarding the jury instructions, where the defendant asked that the instruction be given that the defendant- the government had to prove that the defendant had knowledge that Ward was a felon, the government counsel then responded and said, I believe that's already covered by the instructions and referred to the specific page numbers. Those instructions were asked to counsel one and two, the government must prove that the defendant knew the crime charge was to be committed or was being committed, and so on and continued beyond that. At that point, the defendant did not say that he did not agree, but then instead agreed, okay, we don't need it, essentially conceding that those instructions- He didn't say we don't need it. He just said nothing. Well, he didn't say immediately yes, but later in that discussion, he did- Where did he say we don't need it? It's on joint empedics. I believe the discussion starts at 273, so I believe it's on page 275, where the defense counsel comes in and says, I'm looking at all these, we've now talked about three different jury instructions, all relating to Neville Ward. First, we're going to instruct that the evidence that he pled guilty to counts one and two cannot be used as evidence of guilt of the defendant. However, it is relevant to aiding and abetting, but then they asked for the instruction about knowledge and he pulled back, defense counsel pulled back and said, we're going to confuse the jury with all of these different instructions. I share Judge Keenan's, I think, perplexity as to why you are making this argument. Why does it matter? I mean, you almost seem to be resisting the notion that it's plain error. I realize that you argued for wavering your brief, but is this really the best use of your time? It appears not, Your Honor. Now, I don't want to undercut Judge Keenan's question, but I really don't, I'm not quite seeing how it advantages you to argue that it's waver as opposed to plain error. Yes, Your Honor. I have to agree with you that it might be better to argue plain error, but I still think that that dialogue is relevant to Judge Keenan's question of, was a jury entitled to the more specific instruction? And at this point, you see this dialogue between the court where the defense counsel then said, we were running the risk of confusing the jury by including what we've identified as what would be maybe a more specific instruction. And instead, both parties agreed to argue that in their closings and agreed that the instruction as given would be better to cover what, to cover this knowledge requirement and the intent and mens rea requirement. And I did not mean to cut off Judge Keenan's. Oh, not at all. No, no. I mean, that's where I started out too. Why are we arguing about the distinction from your position? Your Honor, I wanted to also discuss the 404B issue. And the defense counsel has argued that it's not relevant to any element of the offense. Well, let's start out with, do you believe it's intrinsic or extrinsic, and do you believe it makes a difference to the analysis and ultimate disposition of the issue? Well, I'd argue that it's intrinsic. And the reason for that is that this offense, the evidence of the May 21st transaction occurred within one week of the offense conduct charged in count one of the indictment. It occurred within the six-week period between counts one, the offense conduct for counts one and counts two. The offense itself, all three offenses or all three instances involved the defendant initiating the sale of the firearm. All three offenses took place at the defendant's place of employment. There were distinct similarities between these such that they were events on May 21st were inextricably intertwined with the charge conduct. Therefore, I would argue that it is intrinsic to the offense. I think the government was exercising precaution in introducing this as a 404B evidence, which required the government to demonstrate that it was relevant to something beyond propensity, that it was relevant to knowledge, it was relevant to a common scheme or plan, it was relevant to his absence of mistake. And also require the district court to offer a limiting instruction, which the district court did offer not once but twice, and offered it when the evidence was introduced and again in the jury instructions. You know, the May 21st offense, I just don't get how you say that's extrinsic. Because you've got a different transaction on a different date, a different principle, different firearms. And we've said that in order to qualify as extrinsic, the acted issue must be inextricably intertwined with the charged act, or both acts are part of a single criminal episode, or the other acts were necessary preliminaries to the crime charge. You don't have that here. Well, Your Honor, here I think because of the similarity of events and because the sequence of times and the temporal proximity, we'd argue that it was. That doesn't do it under Leidy. Please use the Leidy analysis and tell me how this is intrinsic. Well, Your Honor, I think we make an alternative argument, and I think this is why we did introduce this as 404B evidence at trial. Because there are certain limitations to whether or not this would be part of the same course of conduct. Arguably, it is. But here, I think as 404B evidence, it is evidence of knowledge, intent. It's evidence of absence of mistake. It's evidence of plan. And I would like to direct the Court's attention to the definition of knowledge that was offered in the jury instructions and that both parties agreed to. The district court advised the jury that knowledge means that the defendant was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident. And I think because of that specific definition, that the events of this May 21st incident were specifically relevant under 404B to that intent requirement, that knowledge requirement, for the defendant's conviction under felon in possession of a firearm. And you're not conceding that it's not intrinsic because of the similarity of events in almost a continuum involving the same locale, the same buyer, etc. You're arguing in the alternative. Yes, Your Honor. It was an alternative argument. And we recognize that that May 21st event, although part of that same sequence of events and there were distinct similarities, it wasn't a separate charged offense. And therefore, we introduced to us 404B evidence, understanding that that would come with the requisite limiting instructions. And therefore, the risk of prejudice or the risk of the jury misusing that information would be limited. Was it necessary for you to proceed under an aiding and abetting theory? Your Honor, in my review of this matter, I don't think that it was necessary. And I think if you look... Why not just go after this guy as a principal? And I think we did, Your Honor. I think we absolutely went after him as a principal. I think in our opening and closing arguments, it's clear that as to the May 14th incident, we were arguing that he actually physically possessed a firearm. Right. And, you know, the jury found in your favor. I realize this is hindsight, but, you know, I was just wondering, you must have had some discussions about whether it was necessary to include those aiding and abetting counts or whether you were just going to head directly after him as a principal on a theory of constructive possession. Yes, Your Honor. And, you know, I'm prepared to admit to the court today that I think it would have been clearer for us to have pursued specifically actual possession as to the May 14th and constructive possession as to the June 27th transaction and to have left the aiding and abetting out. I think the fact that both defendants were felons, they both possessed firearms, that led us to indict it as aiding and abetting each other. However, I'm inclined to agree with the court that actual and constructive possession was the better way to... Or the better theories that under which this defendant could be found guilty. And additionally, I think in our closing and our opening arguments, the government counsel made that clear to the jury that those were the basis for guilt that it was pursuing. We argued actual physical possession as to May 14th. We argued dominion and control over the firearm and especially over the premises where the gun transaction occurred on June 27th. And those were the theories of liability that we pursued at trial. All right. Thank you. Thank you very much. Thank you very much. Seeing that there are no further questions from the panel, we argue that the defendant is not entitled to relief on his claims. Therefore, we ask that you affirm the judgment of the district court. Thank you. We thank you. Mr. Dubois, you have some rebuttal time, sir. Thank you, Your Honor. A couple of things, and I would, with the court's indulgence, also like to briefly touch on the sentencing argument that I didn't have a chance to get to by first go-round. But on rebuttal, I agree with Judge Keenan that the 404B evidence clearly fails the Leidy test. It wasn't part of a single episode, and it was— I didn't say it did. I asked you to address it. Well, my answer would be that, yes, it did fail the Leidy test, that it is clearly 404B. And I think it's sort of hindsight to this point for the government now to package it as something other than what it was. Actually, I did say it did not really. You might have. I'm sorry. I take that back. As to the aiding and abetting instruction, I think that when you put it in your proposed jury instructions, when you specifically, during the charge conference, request that the judge give your proposed instruction, you have preserved the issue. The district court, at the close of the charge, said, is there anything other than what has previously been discussed you would like to object to? I think it was fair for the defendant to think at that point they had made their request, the judge had declined to give it, and therefore we are not on plain error. If we're not on plain error, I think it's clear that this was a proper instruction on a non-obvious issue, on a very closely contested— I can't see how you're— under the third prong of the line, of how your substantial rights were affected because the instruction that you got may not have been ideal and you may have wanted to get it in a more specific form, but it gave you a hunk of what you wanted. I think that's right, Your Honor, but we're not on plain error in our view. That we did request it, we did request it at the charge conference, and we didn't get it. I don't see how that is not sufficient to preserve the error for review by this court. If I may speak just very briefly on the sentencing issue, because I think it's important. The court gave a two-level increase based on Mr. Cox's alleged possession of three firearms. There's no evidence that he possessed the firearm on June— on May 21st, either constructively or actually. That was an error that— No, I mean, you know, the sentencing question is decided under a preponderance. That's correct, Your Honor. And it's, you know, that's a totally different question from the standard of proof. That's correct. And the evidence that the government pointed to at the sentencing hearing to support that enhancement were two. One, that Mr. Cox had gotten money for that May 21st transaction, and second, that he had helped Mr. Brunson obtain the gun. Both of those, I think, the government now admits in their brief were incorrect and were erroneous. Neither— they were— the government counsel at sentencing was conflating one transaction with another. So there is, in fact, no evidence that that third gun was ever in Mr. Cox's— We have to find that finding on the three firearms clearly erroneous. That's correct, Your Honor, and it was clearly erroneous. We would propose. And we not withstand— of the enhancement. That's correct, Your Honor, but there's no evidence we would submit of constructive possession, certainly none of actual. But Mr. Brunson testified, it was my gun, I went out and got the gun, I controlled the gun at all times. Mr. Cox had no dominion in control. What about the district court statement that she was going to apply the same sentence no matter what? Well, that's very interesting because the judge said that she came to her sentence, her departure sentence, by way of the guidelines. And one thing that I'm taking myself for, not including my reply brief that I noticed when I was preparing for argument today, is the court said, I'm going from criminal history category 3 to criminal history category 5 based on offense level 24. That was the erroneous range. That's how she got to her range that gave her the 100-month sentence. Had she applied that same analysis going from the proper offense level 22 from criminal history category 3 to criminal history category 4, she would have ended up with a different range that would not have supported a 100-month sentence. So given that error, we cannot presume that the court would have given the same sentence absent the sentencing calculation error which infected her later upper departure determination. Thank you, Your Honor. We'll come down and greet counsel and just take a brief recess.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, Barbara Milano Keenan